IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

M. H.
a minor child, by and through his
mother and legal guardian, et al.,

   Plaintiffs,

     v.

CLYDE L. REESE, III
in his official capacity as
Commissioner of the Department of
Community Health,

   Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-1427-TWT

**OPINION AND ORDER**

This is an action for injunctive and declaratory relief in which the Plaintiffs claim that the Defendant is violating their rights under the Medicaid Act. It is before the Court on the Defendant's Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings [Doc. 14]. For the reasons set forth below, the Defendant's Motion is GRANTED in PART and DENIED in PART.

## I. Background

The Plaintiffs in this case are children who receive Medicaid-funded nursing services through Georgia's Department of Community Health ("DCH").[1] Under the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid Act,[2] Georgia is required to provide eligible children with "medically necessary" health care services.[3] "Medically necessary" means all services or treatments provided by the Medicaid Act that will "correct or ameliorate" any physical and mental illnesses and conditions discovered during a screen.[4] One such service is private duty nursing care.[5] DCH created the Georgia Pediatric Program ("GAPP") "as its service-delivery model for providing nursing care in the home . . . ."[6] The private duty nursing services are provided by an in-home skilled nurse and operate under the direction of the recipient's physician.[7] However, DCH has delegated to the Georgia Medical Care Foundation, Inc. ("GMCF") the duty of determining whether to grant

---

[1]   Compl. ¶ 3.

[2]   42 U.S.C. §§ 1396a(a)(43), 1396d(r).

[3]   Compl. ¶ 5.

[4]   42 U.S.C. § 1396d(r)(5).

[5]   Compl. ¶ 134.

[6]   Id. ¶ 60.

[7]   Id. ¶¶ 61, 63.

requests for additional private duty nursing care hours that are made by the recipient's physician.[8] When determining whether to grant a request for private duty nursing services, GMCF must adhere to the medically necessary standard noted above and, additionally, must consider the treating physician's opinion of what is medically necessary for his or her patient.[9]

The Plaintiffs contend that they have been denied sufficient hours of private duty nursing services because the Defendant has not approved their requests for private duty nursing services based on physician recommendations. Specifically, M.H. received a letter on April 1, 2015, notifying him that his private duty nursing hours were being placed on a "weaning schedule," which will incrementally reduce his nursing services from 18 hours per day to 12 hours per day over an 8 week period.[10] M.H.'s treating physician, however, recommends that he receive 18 hours per day of nursing care.[11] S.R.'s physician has requested three times since September 2014 that

---

[8] Id. ¶ 63.

[9] Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1255 (11th Cir. 2011) (holding that "[a] state may adopt a definition of medical necessity that places limits on a physician's discretion," but "[b]oth the treating physician and the state have roles to play . . . and 'a private physician's word on medical necessity is not dispositive'" (quoting Moore v. Medows, 324 Fed. App'x 773, 774 (11th Cir. 2009))).

[10] Compl. ¶ 2.

[11] Id.

she receive 112 hours per week of nursing care.[12] But all three requests were denied, and S.R. currently has only been approved for 84 hours per week.[13]

Based on these purportedly improper denials of private duty nursing services and other health care services, the Plaintiffs allege violations of the Medicaid Act's EPSDT provisions and of their rights under the Fourteenth Amendment. However, this is not the first time that the Plaintiffs have alleged violations by the Defendant. In 2008, M.H., who was later joined by S.R., brought a very similar complaint against DCH and its Commissioner.[14] In that case, this Court granted the Defendant's motion for summary judgment on every ground except the issue of whether DCH provided all medically necessary nursing hours.[15] After this Court's Order, the Defendant agreed to an offer of judgment with S.R., in which DCH agreed to be permanently enjoined from reducing S.R.'s hours of skilled nursing below 60 hours per week for one year.[16] Afer the 12 month period ended, GAPP would review S.R.'s condition on an annual basis to determine the number of medically necessary private duty nursing

---

[12] Id. ¶ 4.

[13] Id.

[14] Def.'s Mot. to Dismiss, Ex. B.

[15] Hunter *ex rel.* Lynah v. Cook, No. 1:08-CV-2930-TWT, 2013 WL 2252917, at *7 (N.D. Ga. May 22, 2013).

[16] Def.'s Mot. to Dismiss, Ex. E, at 2.

hours for her condition.[17] M.H. decided to go to trial. At trial, this Court enjoined DCH from reducing M.H.'s skilled nursing hours below 18 hours per day for 180 days.[18] The Defendant appealed the decision to the Court of Appeals for the Eleventh Circuit, but the Eleventh Circuit ruled that the action was moot because the 180 day injunction had expired.[19]

The Plaintiffs filed this Complaint on April 29, 2015, seeking declaratory and injunctive relief under 42 U.S.C. § 1983. On July 10, 2015, the Defendant filed a Motion to Dismiss, arguing that the Plaintiffs' allegations are barred by res judicata. The Defendant also contends that the Plaintiffs have failed to sufficiently articulate their claims.

---

[17]    Id. at 2, 3.

[18]    Hunter ex rel. Lynah v. Cook, 1:08-CV-2930-TWT, 2013 WL 5429430, at *14 (N.D. Ga. Sept. 27, 2013).

[19]    Def.'s Mot. to Dismiss, Ex. G, at 7.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[20] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[21] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[22] Generally, notice pleading is all that is required for a valid complaint.[23] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[24]

---

[20] Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

[21] Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[22] See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[23] See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[24] See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S. Ct. at 1964).

## III. Discussion

### A.    The Defendant's Motion to Dismiss

In Counts I, II, and III, the Plaintiffs contend that DCH violated the EPSDT provisions of the Medicaid Act by denying them "medically necessary health care services – including private duty nursing services, personal care services, and case management services."[25] The Defendant argues that these claims are identical to the claims in the 2008 action and, therefore, should be barred by res judicata.[26] The doctrine of res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised in [a previous] action."[27] Res judicata is appropriate when the original decision (1) constituted a final judgment on the merits, (2) was rendered by a court of competent jurisdiction, (3) involved identical parties, and (4) dealt with the same claims.[28] Here, the parties do not disagree that the first,

---

[25]    Pls.' Resp. to Mot. to Dismiss, at 1.

[26]    The Defendant also argues for the first time in his reply brief that the Plaintiffs' claims are barred by collateral estoppel. However, "[a]s a general rule, federal courts do not consider arguments that are presented for the first time in a reply brief." Rindfleisch v. Gentiva Health Servs., Inc., 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014) (citing Herring v. Secretary, Dep't of Corrections, 397 F.3d 1338, 1342 (11th Cir. 2005)).

[27]    Olmstead v. Amoco Oil Co., 725 F.2d 627, 631-32 (11th Cir. 1984).

[28]    I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986).

second, and third elements of res judicata are met for all of the Plaintiffs' claims. The issue is whether the fourth element is satisfied.

With regard to the Plaintiffs' claims that the Defendant unlawfully denied their requests for medically necessary private duty nursing services, there is no identity between the claims. "It is now said, in general, that if a case arises out the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."[29] However, "[r]es judicata does *not* apply where the facts giving rise to the second case only 'arise after the original pleading is filed in the earlier litigation.'"[30] In the Plaintiffs' present cause of action, they allege improper denials that occurred between 2014 and 2015; the previous action involved denials that occurred prior to 2013. Thus, the nucleus of operative facts giving rise to the Plaintiffs' present claims arose after the previous action.

In response, the Defendant contends that, with respect to M.H., his claim is barred by res judicata because his condition has not changed since the 2013 permanent injunction expired. This Court disagrees. To be sure, the Eleventh Circuit did hold in

---

[29] In re Piper Aircraft Corp., 244 F.3d 1289, 1297 (11th Cir. 2001) (quoting Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999)).

[30] Id. at 1298 (quoting Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir. 1992)).

Moore *ex rel.* Moore v. Reese that DCH may reduce a recipient's private duty nursing hours if the recipient's condition is chronically stable.[31] But that does not mean DCH's decision to place M.H.'s private duty nursing hours on a weaning schedule is based on the exact same facts as the claims in the 2008 action. Moreover, the stability of the recipient is just one factor among several factors that GMCF considers when deciding whether additional private duty nursing hours are medically necessary.[32] Thus, M.H.'s claim that the Defendant wrongfully denied him medically necessary private duty nursing services is not barred by res judicata. The Defendant's Motion to Dismiss is denied in this respect.

For S.R.'s claim that she was denied medically necessary private duty nursing services, the Defendant argues that the 2013 offer of judgment acts as res judicata to her current action. Specifically, he contends that the offer was "permanent and only limited by the consumer's ongoing eligibility for EPSDT services, the subject of the earlier suit and this lawsuit."[33] S.R.'s offer of judgment did permanently enjoin the

---

[31] See 637 F.3d 1220, 1258 (11th Cir. 2011) (holding that DCH may consider the stability of the recipient's condition when determining the medical necessity of a service).

[32] Id. at 1240-41 (listing the criteria that the GMCF Medical Review Team uses when determining the number of nursing hours that are medically necessary for a recipient).

[33] Def.'s Reply Br. in Supp. of Mot. to Dismiss, at 3.

Defendant from reducing her private duty nursing hours below 60 hours per week for one year.[34] But this injunction expired on July 2, 2014.[35] After the expiration of the 12 month period, the Defendant was supposed to review S.R.'s condition on an annual basis and any requests for additional services were to be expedited through GAPP.[36] S.R.'s claims in this action are all based on purportedly improper denials that occurred after July 2, 2014. The offer of judgment, therefore, does not prevent S.R. from challenging whether the Defendant's recent denials are in accordance with the medically necessary standard. Thus, S.R.'s claim regarding her requests for additional private duty nursing care hours is not barred by res judicata. The Defendant's Motion to Dismiss is denied in this respect.

Next, regarding the Plaintiffs' claim that the Defendant fails to provide personal care services, res judicata does not bar their claim. In its 2013 Order, this Court granted summary judgment to the Defendant on the issue of whether DCH denied personal care services.[37] It noted that "the Plaintiffs' evidence does not indicate that

---

[34] Def.'s Mot. to Dismiss, Ex. E, at 2.

[35] Pls.' Resp. to Mot. to Dismiss, at 8.

[36] Def.'s Mot. to Dismiss, Ex. E, at 2, 3.

[37] Hunter *ex rel.* Lynah v. Cook, No. 1:08-CV-2930-TWT, 2013 WL 2252917, at *1 (N.D. Ga. May 22, 2013).

any Plaintiff was personally deprived of . . . personal care services . . . ."[38] In the present Complaint, the Plaintiffs claim, once again, that DCH fails to provide medically necessary personal care services. However, M.H. explicitly alleges a deprivation of personal care services: he asserts that his physician has prescribed, based on medical necessity, six hours per day of personal care services, but that DCH has unlawfully denied him personal care services.[39] Thus, the current claim is based on a new set of facts and, therefore, is not barred by res judicata. The Defendant's Motion to Dismiss is denied in this respect.

With respect to the Plaintiffs' claim that DCH fails to provide case management services, their claim is barred by res judicata. Like the personal care services claim, this Court granted summary judgment to the Defendant on the issue of whether DCH denied case management services.[40] In the present action, the Plaintiffs, once again, allege that DCH fails to provide case management services.[41] However, neither of the Plaintiffs specifically alleges new facts with regard to whether DCH provides case management services. They merely allege that both M.H. and S.R. require "case

---

[38] Id.

[39] Compl. ¶¶ 2, 39, 110.

[40] Hunter, 2013 WL 2252917, at *1.

[41] Compl. ¶¶ 156, 160.

management services to help manage and coordinate the care of [their] many complex conditions,"[42] and that DCH must provide the service if it is medically necessary.[43] Thus, since the Plaintiffs' current claim is identical to their claim in the 2008 action, their claim should be barred by res judicata. The Defendant's Motion to Dismiss is granted in this respect.

In Counts II and IV, the Plaintiffs allege that DCH violates the Medicaid Act and due process by failing to provide them with adequate notice of its decisions to deny or reduce benefits. The Defendant argues, like in the previous claims, that this claim is barred by res judicata. In this Court's 2013 Order, it granted summary judgment to the Defendant on the issue of whether DCH provided adequate notice to the Plaintiffs.[44] It noted that "[t]he Plaintiffs provide no case law explaining how the boilerplate language violates their due process rights."[45] Here, despite the Plaintiffs' contention that "the notices issued by GMCF have changed over the intervening time period,"[46] they fail to state how these notices have in anyway changed since the 2008

---

[42] Id. ¶¶ 1, 3.

[43] Id. ¶ 154.

[44] Hunter, 2013 WL 2252917, at *7.

[45] Id.

[46] Pls.' Resp. to Mot. to Dismiss, at 7.

action. Indeed, in the present Complaint, they again allege that GMCF uses boilerplate language in its notices and then list alleged errors contained in the Plaintiffs' notices.[47] But these are not operative facts that would differentiate this claim from the previous claim. Thus, the Plaintiffs' claim regarding whether the Defendant provides adequate notices should be barred by res judicata. The Defendant's Motion to Dismiss is granted in this respect.

Finally, the Defendant contends that the Plaintiffs have neither sufficiently articulated nor adequately supported their claims.[48] Specifically, the Defendant appears to argue that the Plaintiffs' Complaint is a form of "shotgun pleading." "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."[49] The Eleventh Circuit has repeatedly condemned shotgun pleadings,

---

[47] Compl. ¶¶ 97-108.

[48] Def.'s Mot. to Dismiss, at 11.

[49] Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

noting that "[s]uch pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently."[50]

While the Plaintiffs do make the common mistake of incorporating each preceding count into the next count,[51] "this is not a situation where a failure to more precisely parcel out and identify facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."[52] In the Complaint, the Plaintiffs have eased the burden of parsing out facts by organizing the factual allegations into subsections that correspond to particular counts. For example, in Counts II and IV, the Plaintiffs assert that the Defendant violated the Medicaid Act and due process by failing to provide them with adequate notice. The corresponding subsections are titled "Lack of Adequate Notice" and "Due Process Requirements." Additionally, as the Defendant notes throughout his briefs, the Plaintiffs' Complaint is very similar to their previous complaint in the 2008 action. DCH did not contend in that action that it had any difficulty understanding the allegations against it. This all may account for why the Defendant chose not to move for a more definite

---

[50] Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006).

[51] Compl. ¶¶ 175, 183, 188, 190.

[52] Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1324 (11th Cir. 2015).

statement under Federal Rule of Civil Procedure 12(e) prior to filing this Motion to Dismiss. In sum, this is not a situation where the claims are so poorly pleaded to warrant dismissal under Federal Rules of Civil Procedure 8(a) and 10(b).[53] The Defendant's Motion to Dismiss is denied in this respect.

### B. The Defendant's Motion for Judgment on the Pleadings

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may file a motion for judgment on the pleadings only after the pleadings have closed. Rule 7(a) provides that allowable pleadings include a complaint and an answer. Accordingly, "[a] motion for judgment on the pleadings may not be filed before the answer."[54] Here, the Defendant has not filed an answer. Thus, the Defendant's Motion for Judgment on the Pleadings is denied.

---

[53] Id. at 1325 ("A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" (quoting Anderson v. District Bd. of Trustees of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996))).

[54] Geltman v. Verity, 716 F. Supp. 491, 492 (D. Colo. 1989); see also Poliquin v. Heckler, 597 F. Supp. 1004, 1006 (D. Me. 1984) ("[T]he pleadings are not closed until after the defendant filed an answer..."); Stands Over Bull v. Bureau of Indian Affairs, 442 F. Supp. 360, 367 (D. Mont. 1977) ("When a defendant has failed to file an answer, a motion for judgment on the pleadings is not the correct procedural remedy.").

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss [Doc. 14] is GRANTED in PART and DENIED in PART.

SO ORDERED, this 16 day of November, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge