IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

M. H.
a minor child, by and through his
mother and legal guardian, et al.,

    Plaintiffs,

     v.

FRANK BERRY
in his official capacity as
Commissioner of the Department of
Community Health,

    Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-1427-TWT

**OPINION AND ORDER**

This is an action seeking injunctive and declaratory relief against the Georgia Department of Community Health. It is before the Court on the Plaintiff's Motion for Class Certification [Doc. 62]. For the reasons set forth below, the Court GRANTS the Plaintiff's Motion for Class Certification [Doc. 62].

**I. Background**

When the Class Action Complaint was filed, the Plaintiff M.H. was a thirteen-year-old Medicaid beneficiary.[1] The Plaintiff suffered a catastrophic brain injury as

---

[1]    Compl. ¶ 1.

a toddler, resulting in a number of neurological conditions including static encephalopathy, cerebral palsy, spastic quadriplegia, and seizure disorder.[2] Under the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid Act, Georgia is required to provide eligible children with "medically necessary" health care services.[3] "Medically necessary" means all services or treatments provided by the Medicaid Act that will "correct or ameliorate" any physical and mental illnesses and conditions.[4] One such service is in-home skilled nursing care, which the Georgia Pediatric Program ("GAPP") provides to eligible children.[5] The Plaintiff participates in the GAPP.[6]

The Defendant Frank Berry is the Commissioner of Georgia's Department of Community Health ("DCH"), which administers the Medicaid program in Georgia.[7] The Georgia Medical Care Foundation, Inc. ("GMCF") is a non-profit corporation that, through a contractual relationship with DCH, reviews and decides all requests for

---

[2]   Id.

[3]   Id. ¶ 5.

[4]   42 U.S.C. § 1396d(r)(5).

[5]   Compl. ¶¶ 2, 60.

[6]   Id. ¶ 2.

[7]   See [Doc. 78].

nursing care made on behalf of Medicaid-eligible children in Georgia.[8] When determining whether to grant a request for nursing services, GMCF must adhere to the medically necessary standard discussed above and must consider the treating physician's opinion of what is medically necessary for his or her patient.[9]

The Plaintiff currently receives eighteen hours per day of in-home skilled nursing care through the GAPP.[10] On April 1, 2015, GMCF notified the Plaintiff's adoptive mother, Thelma Lynah, that the Plaintiff was being placed on a "weaning schedule" that would incrementally reduce his in-home nursing hours from eighteen hours per day to twelve hours per day over an eight week period.[11] According to the Complaint, this weaning schedule contradicts the Plaintiff's treating physician's recommendation of eighteen hours per day of in-home skilled nursing care.[12] On April

---

[8] Compl. ¶ 63.

[9] Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1255 (11th Cir. 2011) (holding that "[a] state may adopt a definition of medical necessity that places limits on a physician's discretion," but "[b]oth the treating physician and the state have roles to play").

[10] Compl. ¶ 74.

[11] Id. ¶ 75.

[12] Id. ¶ 110.

29, 2015, M.H. sued Clyde L. Reese, III[13] under 42 U.S.C. § 1983, alleging that the Defendant violated his rights under the EPSDT provisions of the Medicaid Act.[14] The Plaintiff seeks declaratory and injunctive relief on behalf of himself and similarly situated individuals to enjoin the Defendant from violating the Medicaid Act by denying him and others medically necessary services.[15] On July 6, 2015, the Court granted the Plaintiff preliminary injunctive relief and enjoined Reese from reducing the skilled nursing care hours provided to the Plaintiff below eighteen hours per day.[16]

The Plaintiff now files a Motion to Certify a Rule 23(b)(2) class of "all Medicaid-eligible individuals under the age of 21 who are now, or will in the future be, [participants] in the GAPP program and are subject to the policies and practices of Defendant."[17] The Plaintiff's class action focuses on the following policies or

---

[13]    When the Plaintiff filed his Complaint, Clyde L. Reese, III was the Commissioner of the Georgia Department of Community Health.

[14]    [Doc. 1]. It should be noted that this is not the Plaintiff's first lawsuit against the DCH Commissioner. In 2008, M.H. brought a similar complaint, alleging that DCH failed to provide all medically necessary nursing hours. The Plaintiff also sought class certification. This Court denied the Plaintiff's request for class certification, holding that the Plaintiff failed to demonstrate numerosity. See Hunter v. Cook, No. 1:08-cv-2930-TWT, 2012 WL 12831938, at *3-5 (N.D. Ga. Aug. 2, 2012).

[15]    Compl. ¶ 8.

[16]    [Doc. 13].

[17]    Mot. for Class Cert., at 21.

practices that he alleges fail to conform to the EPSDT provisions: (1) GMCF's alleged failure to accord the treating doctor's recommendation the appropriate weight when determining a member's nursing hours; (2) GMCF improperly assumes that the primary caregivers can be taught all skilled nursing needs in order to wean class members off the program; and (3) GMCF's alleged failure to consider the capacity of the class members' primary caregivers when determining how many nursing hours are appropriate.[18] The Defendant contends that the proposed class does not comply with Federal Rule of Civil Procedure 23.

## II. Class Certification Standard

To maintain a case as a class action, the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of

---

[18] Id. at 4. The Court notes that two other policies are listed in the Plaintiff's Motion. Specifically, the Plaintiff alleges that the Defendant "fails to take into account requirements of the Georgia Nurse Practice Act," and that the Defendant "gives notice to caregivers . . . of the reasons for GMCF's decisions to reduce hours only in conclusory final letters of notification." Id. However, the Plaintiff does not mention the Georgia Nurse Practice Act policy in his Reply Brief, and the Court already dismissed the Plaintiff's claim regarding the final letters. As a result, the Court will not consider those policies or practices for purposes of class certification.

Rule 23(b).[19]  Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[20]

These prerequisites are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[21]  Failure to establish any one of the four factors precludes certification. In addition, under Rule 23(b), the individual plaintiffs must convince the Court that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation; (2) the party opposing the class has refused to act on grounds that apply generally to the class, necessitating final injunctive or declaratory relief; or (3) questions of law or fact

---

[19]    Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)).

[20]    FED. R. CIV. P. 23(a).

[21]    Cooper v. Southern Co., 390 F.3d 695, 711 n.6 (11th Cir. 2004), *overruled in part on other grounds by* Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006).

common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.[22] The party seeking class certification bears the burden of proving that these requirements are satisfied.[23]

The decision to grant or deny class certification lies within the sound discretion of the district court.[24] When considering the propriety of class certification, the court should not conduct a detailed evaluation of the merits of the suit.[25] Nevertheless, the court must perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification.[26] Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.[27]

---

[22] FED. R. CIV. P. 23(b).

[23] General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

[24] Klay, 382 F.3d at 1251; Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc).

[25] Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

[26] Falcon, 457 U.S. at 161; Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).

[27] Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351-52 (2011).

# III. Discussion

## A. Rule 23(a)

To warrant class certification, the Plaintiff must satisfy all four requirements under Rule 23(a) and at least one of the requirements of Rule 23(b). Rule 23(a) provides that:

> One or more members of a class may sue . . . on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[28]

These requirements are referred to as "numerosity," "commonality," "typicality," and "adequacy." And although not explicitly stated in Rule 23, it is well accepted that "[b]efore a district court may grant a motion for class certification, a plaintiff . . . must establish that the proposed class is adequately defined and clearly ascertainable."[29] This requirement is referred to as ascertainability.

---

[28]     FED. R. CIV. P. 23(a).

[29]     Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)); see also Sanchez-Knutson v. Ford Motor Co., 310 F.R.D. 529, 534 (S.D. Fla. 2015) ("The court may address the adequacy of the class definition before analyzing whether the proposed class meets the Rule 23 requirements.").

## 1. Ascertainability

The Defendant challenges whether the putative class is ascertainable. "An identifiable class exists if its members can be ascertained by reference to objective criteria."[30] The analysis of the objective criteria must be administratively feasible, meaning identifying class members is a "manageable process that does not require much, if any, individual inquiry."[31] Here, the Court finds that the proposed class is ascertainable. The class includes all current and future GAPP program members. The members can be ascertained through a review of DCH's and GMCF's records. The Defendant counters that "[t]he only way one can be part of this class is if the member is not receiving all medically necessary hours."[32] And, according to the Defendant, because an inquiry into whether each putative class member is receiving all medically necessary hours is very fact specific, the putative class members cannot be ascertained through a manageable process. However, a GAPP participant can still be a class member without having his or her hours reduced. Indeed, every GAPP participant is

---

[30] Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014) (quoting Fogarazzo v. Lehman Bros., Inc., 263 F.R.D. 90, 97 (S.D.N.Y. 2009)).

[31] Id. (quoting NEWBERG ON CLASS ACTIONS § 3.3 (5th ed.)).

[32] Def.'s Resp. Br., at 19.

subject to the policies and practices the Plaintiff is challenging. Thus, the Court finds that the class is ascertainable.

## 2. Numerosity

To satisfy the numerosity requirement, the Plaintiff must show that joinder of all members of the putative class would be "impractical."[33] "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."[34] "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."[35] Further, "[w]hen the exact number of class members cannot be ascertained, the court may make 'common sense assumption' to support a finding of numerosity."[36] Nevertheless, "a plaintiff still bears the burden of making some showing, affording the district court

---

[33]    FED. R. CIV. P. 23 (a)(1).

[34]    Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986).

[35]    Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986).

[36]    Susan J. v. Riley, 254 F.R.D. 439, 458 (M.D. Ala. 2008) (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983)).

the means to make a supported factual finding, that the class actually certified meets the numerosity requirement."[37]

The Plaintiff contends that there are approximately 763 putative class members.[38] This approximation is based on the testimony of GAPP Program Specialist Sharon Collins who estimated that there are 763 members in GAPP's "in-home skilled nursing services."[39] Thus, according to the Plaintiff, the proposed class easily satisfies the numerosity requirement. In response, the Defendant – citing <u>Hunter v. Cook</u> – argues that the Plaintiff must demonstrate "how often the Defendant reduced or eliminated[] benefits, along with the total number of individuals in the GAPP program."[40] But the Defendant's argument is not responsive to the Plaintiff's class definition here. The class definition includes *all* GAPP members, not just the members whose benefits have been reduced or eliminated. By contrast, in <u>Hunter v. Cook</u>, the class definition was more narrow: "only those [members] whose benefits [had] been reduced, delayed, or denied due to GAPP policies."[41] The Plaintiff therefore has

---

[37]    <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1267 (11th Cir. 2009).

[38]    Pl.'s Reply Br., at 3.

[39]    Collins 2016 Dep., at 43.

[40]    Def.'s Resp. Br., at 17 (quoting <u>Hunter v. Cook</u>, No. 1:08-cv-2930-TWT, 2012 WL 12831938, at *4 n.3 (N.D. Ga. Aug. 2, 2012)).

[41]    <u>Hunter</u>, 2012 WL 12831938, at *2.

presented sufficient evidence for numerosity. Even if the Plaintiff was required to submit evidence regarding the number of members whose benefits had been reduced or denied, the Plaintiff has put forth detailed evidence of at least 50 GAPP members whose nursing hours have been reduced since 2015.[42] This is a sufficient number of putative class members for numerosity.

### 3. Commonality

The commonality requirement is satisfied if the named plaintiff demonstrates the presence of questions of law or fact common to the entire class.[43] Before the Supreme Court's decision in <u>Wal-Mart v. Dukes</u>, the issue of commonality was rarely in dispute. However, <u>Wal-Mart</u> "defined 'common question' with more specificity than it had in prior decisions while reiterating the importance of . . . centrality."[44] Specifically, the Supreme Court held that a common question is one that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[45] It is not necessary that all questions of law and fact be

---

[42]     <u>See</u> Norris Decl., Exs. 2-3.

[43]     FED. R. CIV. P. 23 (a)(2).

[44]     NEWBERG ON CLASS ACTIONS § 3:18 (5th ed.).

[45]     <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011).

common.[46] Indeed, "[e]ven a single [common] question" is sufficient to satisfy the commonality requirement.[47] Nevertheless, commonality "does not mean merely that they have all suffered a violation of the same provision of law."[48] "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"[49]

One method of bridging the "gap" between individual harms and a common injury is to allege a uniform policy or practice by the defendant that affects all putative class members.[50] In Wal-Mart, the putative class, which consisted of 1.5 million women who were current or former Wal-Mart employees, alleged that "the discretion exercised by their local supervisors over pay and promotion matters violate[d] Title VII by discriminating against women."[51] The Supreme Court, however, ruled that

---

[46]    Id. at 359.

[47]    Id. (alteration in original) (quoting Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 COLUM. L. REV. 149, 176 n.110 (2003)).

[48]    Id. at 350.

[49]    Id. at 349-50 (quoting General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

[50]    Id. at 352-53 (quoting Falcon, 457 U.S. at 157-58); see also Holmes v. Godinez, 311 F.R.D. 177, 217 (N.D. Ill. 2015) ("A single system-wide illegal practice or policy can satisfy the commonality requirement.").

[51]    Wal-Mart, 564 U.S. at 342.

Wal-Mart's "'policy' of allowing discretion by local supervisors" was not a common policy or practice that could satisfy the commonality requirement.[52] Rather, "it is a policy *against having* uniform employment practices."[53] "Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question why was I disfavored."[54]

Here, the Defendant argues that, like the class claims in Wal-Mart, the Plaintiff's claims challenging hundreds of individual decisions regarding the reduction of nursing hours do not create a common question. But even if determining the appropriate amount of nursing hours necessitates individualized inquiries down the road, common questions regarding whether the GAPP's higher level policies and

---

[52]     Id. at 355.

[53]     Id.

[54]     Id. at 352.

practices violate the Medicaid Act may satisfy commonality.[55] As a result, the Court now turns to the Plaintiff's proposed common questions.

In his Motion for Class Certification, the Plaintiff asserts the following overarching common question: "whether the current administration of the GAPP program by DCH and GMCF violates the Medicaid Act."[56] This broad question gives the Court pause. It bears resemblance to the type of generalized question the Supreme Court warned against in Wal-Mart – a question which simply asks whether the class members all "suffered a violation of the same provision of law."[57] But the Plaintiff has set forth the specific policies or practices he is challenging. As the Court noted above, he challenges the following purported policies and practices: (1) GMCF's weaning policy; (2) GMCF's failure to consider the primary caretaker's capacity; and (3) GMCF's failure to "accord the treating physician's recommendation the appropriate

---

[55]     See Thorpe v. District of Columbia, 303 F.R.D. 120, 146 (D.D.C. 2014) (holding that commonality existed where the plaintiffs' claims raised several common questions, including "(1) are there deficiencies in the District's existing system of transition assistance? (2) if so, what are those deficiencies? and (3) are the proven deficiencies causing unnecessary segregation?"); Lane v. Kitzhaber, 283 F.R.D. 587, 597 (D. Or. 2012) ("despite the individual dissimilarities among class members, 'commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all the putative class members'" (quoting Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001))).

[56]     Mot. for Class Cert., at 25.

[57]     Wal-Mart, 564 U.S. at 350.

weight."[58] To prove these policies or practices exist, the Plaintiff has put forth various evidence. For example, to demonstrate that the GMCF operates a weaning policy, the Plaintiff points to the GAPP's official "Policies and Procedures," which state that the primary caregiver is expected to assume "some" responsibility for performing skilled nursing tasks.[59] The Plaintiff then cites testimony from a GMCF employee who testified that, when a weaning schedule is put in place, "it's getting the family used to they're going to be assuming more care of their child and picking up more of the nursing care of their child."[60] Moreover, a GMCF representative testified that DCH does not permit GMCF to take into account the primary caregiver's outside obligations, such as work and other dependents, when determining a GAPP member's nursing hours.[61] The Defendant admits that all GAPP policies are applicable to every member of the GAPP program.[62] Thus, if the Plaintiff proves that these policies and practices exist and are in violation of the Medicaid Act, then each class member will have suffered the same harm.

---

[58]   Pl.'s Reply Br., at 6-9.

[59]   Mot. for Class Cert., Ex. A, §§ 702.1(B)-(D).

[60]   Carey Dep., at 29-30.

[61]   Collins 2016 Dep., at 72.

[62]   Def.'s Resp. Br., at 2.

This case is analogous to <u>P.V. ex rel. Valentin v. School District of Philadelphia</u>. There, a group of autistic students in the Philadelphia School District challenged the legality of the District's "up-leveling" policy, which resulted in autistic students automatically transferring from one school to another with little input from the autistic students' parents.[63] The plaintiffs alleged that the policy violated, *inter alia*, the Individual and Disabilities Act because it occurred with little or no parental notice or involvement and did not consider the children's individual circumstances.[64] As a result, the plaintiffs sought to certify a (b)(2) class of all autistic students in the Philadelphia School District "who have been transferred, are in the process of being transferred, or are subject to being transferred pursuant to the School District's upper-leveling policy."[65] The School District contended that, in order for the plaintiffs to prevail, they would have to present "individualized proof of how each class member was affected by the . . . 'policy.'"[66] Thus, according to the School District commonality could not be met.

---

[63]    289 F.R.D. 227, 228 (E.D. Pa. 2013).

[64]    <u>Id.</u> at 231.

[65]    <u>Id.</u>

[66]    <u>Id.</u> at 233.

T:\ORDERS\15\M. H\classcerttwt.wpd                    -17-

This case is analogous to <u>P.V. ex rel. Valentin v. School District of Philadelphia</u>. There, a group of autistic students in the Philadelphia School District challenged the legality of the District's "up-leveling" policy, which resulted in autistic students automatically transferring from one school to another with little input from the autistic students' parents.[63] The plaintiffs alleged that the policy violated, *inter alia*, the Individual and Disabilities Act because it occurred with little or no parental notice or involvement and did not consider the children's individual circumstances.[64] As a result, the plaintiffs sought to certify a (b)(2) class of all autistic students in the Philadelphia School District "who have been transferred, are in the process of being transferred, or are subject to being transferred pursuant to the School District's upper-leveling policy."[65] The School District contended that, in order for the plaintiffs to prevail, they would have to present "individualized proof of how each class member was affected by the . . . 'policy.'"[66] Thus, according to the School District commonality could not be met.

---

[63]    289 F.R.D. 227, 228 (E.D. Pa. 2013).

[64]    <u>Id.</u> at 231.

[65]    <u>Id.</u>

[66]    <u>Id.</u> at 233.

The district court disagreed with the School District. It noted that the School District's argument failed to recognize that the "Plaintiffs' Complaint alleges a systemic failure, not a failure of the policy as applied to each member individually."[67] The district court found that common questions of law or fact included "whether the School District upper-levels autistic students without meaningful parental involvement, . . . [and] whether the School District considers the individual needs of autistic students prior to deciding where to upper-level that student."[68] Like the autistic students in P.V., the Plaintiff here challenges broad policies and practices that apply to each member of the GAPP. Common questions of law or fact that are susceptible to common answers are present. For example, whether the GMCF operates a weaning policy, and whether such a program is in violation of the Medicaid Act, are central questions to the Plaintiff's and class members' claims. The Plaintiff, therefore, has satisfied the commonality requirement.

### 4. Typicality

The typicality requirement mandates that the claims and defenses of the representative plaintiffs are typical of the claims and defenses of the class.[69] This

---

[67] Id. at 234.

[68] Id.

[69] FED. R. CIV. P. 23(a)(3).

requirement is satisfied when "a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff."[70] But "[c]lass members' claims need not be identical to satisfy the typicality requirement."[71] This is because "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."[72] "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."[73]

Here, the named Plaintiff and the putative class members are all Georgia residents who receive EPSDT services through the GAPP; moreover, all of them are subject to the GMCF's policies and practices that allegedly result in improper denials, delays, reductions, or terminations of EPDST services. They seek an injunctive relief to remedy the alleged harm caused by the Defendant's practices and policies. As a result, the Court finds that the typicality requirement is met. In response, the Defendant argues that the named Plaintiff is atypical, because he is seeking "personal

---

[70] Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1022 (11th Cir. 1996), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008).

[71] Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012).

[72] Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (quoting Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).

[73] Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir. 1984).

support services" in addition to nursing care services.[74] But, according to the Plaintiff, he is not seeking class treatment for his personal support services claim.[75] And, of course, under Rule 23(c)(4), the Court has the power to allow class treatment for only certain issues.[76] As a result, the class claims are limited to those regarding nursing services. The Defendant then argues that because an individualized inquiry is required to determine the medically necessary amount of nursing hours for each member, typicality cannot be met. However, the Defendant's argument – once again – misses the point of the Plaintiff's Motion for Class Certification. The Plaintiff's class certification motion is challenging the legality of GMCF's general policies and practices, not the legality of those policies and practices as applied to each particular GAPP member.

### 4. Adequacy of Representation

To prove adequacy of representation, a plaintiff must demonstrate that the class representatives "fairly and adequately protect the interests of the class."[77] This requirement serves to uncover conflicts of interest between named parties and the

---

[74]     Def.'s Resp. Br., at 23.

[75]     Pl.'s Reply Br., at 10.

[76]     FED. R. CIV. P. 23(c)(4).

[77]     FED. R. CIV. P. 23(a)(4).

class they seek to represent.[78] A determination of adequacy "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."[79] Here, the Defendant contends a substantial conflict of interest exists, because the named Plaintiff is seeking eighteen hours of skilled nursing and six hours of personal support services. The Defendant reasons that "if the Court accepts Plaintiff's M.H.'s premise that the Department must consider the caregiver's personal circumstance in allocating hours, it is likely the provision of personal support services would have some effect on the allocation of hours."[80] The Court disagrees. The Defendant's proffered conflict is largely based on speculation. A class member's circumstances could mandate that he or she still receive all requested personal support services hours in addition to nursing services hours. And as the Plaintiff points out, personal support services cannot be substituted for skilled nursing services.[81] Thus, the Court is unwilling to find a conflict of interest.

---

[78]     Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

[79]     Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

[80]     Def.'s Resp. Br., at 25.

[81]     Collins 2016 Dep., at 129-30.

Next, the Defendant argues that the Plaintiff has failed to demonstrate that the class counsel is adequate to represent the putative class. Specifically, the Defendant argues that merely asserting his lawyers have worked on one prior case involving medically fragile children is insufficient to prove adequacy. In response, the Plaintiff has put forth the Declaration of his attorney – John H. Fleming. As stated in the Declaration, Mr. Fleming has extensive experience working on complex litigation matters in addition to class actions.[82] Mr. Fleming's co-counsel, Joshua Norris, has extensive experience advocating for medically necessary services for children, including litigating multiple cases on behalf of GAPP members.[83] Furthermore, counsel is pursuing the matter on a pro-bono basis and have agreed to advance litigation costs.[84] As a result, the Court finds that the Plaintiff's counsel is adequate.

**B. Rule 23(b)(2)**

Finally, the Plaintiff must demonstrate that class treatment is appropriate pursuant to Rule 23(b)(2). Certification of a class seeking injunctive relief is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

---

[82]    Fleming Decl. ¶¶ 4-8.

[83]    Id. ¶¶ 11-12.

[84]    Id. ¶ 14.

declaratory relief is appropriate respecting the class as a whole."[85] The Supreme Court has given special emphasis to the final clause: "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."[86]

Here, the Defendant argues that because the Plaintiff is claiming that DCH fails to provide all medically necessary skilled nursing hours, a single injunction or declaratory judgment would not provide relief to the whole class. The Defendant emphasizes that "whether the Department provides all medically necessary hours is a fact specific inquiry."[87] To be sure, the issue of whether a specific GAPP member is receiving all medically necessary hours is an individualized inquiry. But the Plaintiff is not seeking an individualized review of each GAPP member's nursing hours as injunctive relief. Rather, he seeks injunctive or declaratory relief that certain

---

[85]    FED. R. CIV. P. 23(b)(2).

[86]    Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360-61 (2011).

[87]    Def.'s Resp. Br., at 27.

GMCF policies and practices are unlawful. "By their very nature such policy changes are generally applicable, and therefore would benefit all class members."[88]

This case is distinguishable from cases where the court denied certification because the plaintiffs sought, for instance, a court-created panel to determine a separate injunctive order for each class member. In <u>Jamie S. v. Milwaukee Public Schools</u>, the plaintiffs – a group of school students with disabilities – sought the creation of "a court-monitored system to identify disabled children who were delayed or denied entry into the [individualized education programs] process, implement 'hybrid' IEP meetings, and craft compensatory-education remedies."[89] In reversing the lower court's order granting certification, the Seventh Circuit found that such an injunction was not appropriate relief under Rule 23(b)(2). The complex remedial scheme would "merely initiate a process through which highly individualized determinations of liability and remedy are made," making it "class-wide in name only" and "certainly not . . . final."[90] Unlike the injunctive relief in <u>Jamie S.</u>, the Plaintiff here seeks systemic relief that mandates the Defendant accord greater weight to the physicians' recommendations, consider the capacity of the primary caregiver,

---

[88] <u>N.B. v. Hamos</u>, 26 F. Supp. 3d 756, 774 (N.D. Ill. 2014).

[89] 668 F.3d 481, 485 (7th Cir. 2012).

[90] <u>Id.</u> at 499.

and stop operating the program as a weaning program. As mandated by <u>Wal-Mart</u>, this class action can be resolved in one stroke with an injunction or declaratory judgment finding the Defendant's policies and practices to be in violation of the Medicaid Act. The Court therefore concludes that the requirements of Rule 23(b)(2) are met.

## IV. Conclusion

For these reasons, the Court GRANTS the Plaintiff's Motion for Class Certification [Doc. 62].

SO ORDERED, this 13 day of June, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge