IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

M. H.
a minor child, by and through his
mother and legal guardian, et al.,

     Plaintiffs,

       v.

DEAN BURKE, M.D.,[1]
in his official capacity as Commissioner
of the Department of Community
Health,

     Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-1427-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendant Commissioner's Second Motion to Dismiss [Doc. 474]. For the following reasons, the Defendant's Second Motion to Dismiss [Doc. 474] is GRANTED.

### I.    Background[2]

The facts of this case are well known to the parties, and the Court recounts only the relevant ones here, including the events leading to the current procedural posture of this matter. In June 2022, the Defendant appealed several of this Court's

---

[1] Dean Burke, M.D. became the Commissioner of the Georgia Department of Community Health in August 2025. The Clerk is directed to substitute Dr. Burke as the named Defendant in this action.

[2] The Court accepts the facts as alleged in the Class Action Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

orders to the Eleventh Circuit, including the Order granting in part and denying in part summary judgment, the Order granting class certification, the Order granting a permanent injunction, and several Orders granting individual preliminary and permanent injunctions. [Doc. 444]. In August 2024, the Eleventh Circuit dismissed the portion of the appeal challenging the Order granting class certification, but reviewed the remainder of the appeal. [Doc. 468 ("Eleventh Cir. Op.") at 10-11]. Ultimately, the Eleventh Circuit reversed this Court's rulings granting summary judgment for the Plaintiffs, found it lacked jurisdiction to consider the Plaintiffs' alternative argument that the Defendant failed to consider the capacity of caregivers in determining how many hours of skilled nursing care to provide to a patient, and that any appeal of the preliminary injunctions was moot. (*Id.* at 12-20).

The mandate was entered in May 2025, and four months later, the Defendant moved to dismiss for a second time. [Doc. 474]. This time, he primarily argues that under the Supreme Court's recent decision in *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025), there is no private right of action for the Plaintiffs claims under § 1983, so their claims must be dismissed.[3]  This Motion is presently before the Court.

---

[3] The Defendant contends, and the Plaintiffs agree, that the Plaintiffs' claims challenging the sufficiency of the review process and the Defendant's alleged "teach and wean" policy are foreclosed by the Eleventh Circuit's decision. The parties are correct. *See* Eleventh Cir. Op. at 11-12. The Eleventh Circuit found it did not have jurisdiction to address the Plaintiffs' claim challenging the Defendant's alleged lack of consideration of caregiver capacity, and this Court did not address the merits of that claim at the summary judgment stage. Thus, that claim remains live.

## II.  Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

The Defendant's primary argument on remand is that, under the Medina decision, the Plaintiffs have no private right of action under § 1983 to enforce the Medicaid EPSDT provisions at issue in this action. (Def.'s 2nd Mot. to Dismiss, at 3-4, 9-13). He argues that this is so because the statutes the Plaintiffs base their claims

on in 42 U.S.C. § 1396d do not contain the required "clear and unambiguous rights-creating language" that *Medina* contemplates. (*Id.* at 11-13). In response, the Plaintiffs contend that under the standards the Supreme Court set forth in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), which it reaffirmed in *Medina*, the EPSDT provisions in the Medicaid Act are among the small handful of provisions that can be enforced by a private action under § 1983. (Pls.' Resp. in Opp'n to 2nd Mot. to Dismiss, at 2-3, 6-19). They also assert that the fact that the EPSDT provisions do not use the word "right" is not controlling under *Medina* and neither is the fact that permitting enforcement of the EPSDT provisions would "open the floodgates to section 1983 enforcement against states." (*Id.* at 16-22). Finally, the Plaintiffs argue that the availability of state administrative remedies to secure access to benefits granted under the EPSDT provisions does not mean that Congress intended to disallow enforcement under § 1983. (*Id.* at 22-23).

The parties' arguments muddy the water as to the current state of the law with regard to whether § 1983 provides a private right of action to enforce certain provisions of the Medicaid Act, so the Court begins with attempting to clarify the applicable law. The Medicaid Act mandates that states that participate in the Medicaid program provide early and periodic screening, diagnostic, and treatment ("EPSDT") services to Medicaid-eligible children under twenty-one years old. *See* 42 U.S.C. §§ 1396a(43) and 1396d(r). Under EPSDT, eligible children must receive all services and treatments covered by the Medicaid Act that are medically necessary "to correct or ameliorate" any physical and mental illnesses and conditions discovered

4

during a screening. *See* 42 U.S.C. § 1396d(r)(5); *see also Moore ex. rel. Moore v. Reese*, 637 F.3d 1220, 1235 (11th Cir. 2011). "[P]rivate duty nursing services" are included in these treatments and services under the Medicaid Act. *See* 42 U.S.C. § 1396d(a)(8). Also included are certain "personal care services" and "primary care case management services." *See* 42 U.S.C. §§ 1396d(a)(24), (a)(25), (t). The Medicaid Act also requires participating states to inform all persons under 21 years old who are eligible for EPSDT of the availability of such services, to arrange for the provision of such services and treatments, and to report to the government information regarding such services provided each fiscal year. 42 U.S.C. § 1396a(a)(43).

The landscape in the area of private actions to enforce the EPSDT provisions of the Medicaid Act has changed in the last few years. Previously, it was settled in this Circuit that § 1983 creates a private right of action to enforce 42 U.S.C. § 1396a(a)(8). *See Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998). The *Doe* decision relied heavily on three Supreme Court decisions: *Blessing v. Freestone*, 520 U.S. 329 (1997); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990); *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418 (1987). *Doe*, 136 F.3d at 713-19. In *Medina*, the Supreme Court expressly overruled these three decisions, and reaffirmed two more recent precedents: *Gonzaga University v. Doe*, 536 U.S. 273 (2002) and *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023).

In *Gonzaga*, the Supreme Court addressed whether a student could sue a private university under § 1983 to enforce provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA"). The Supreme Court ultimately held that

such an action was foreclosed because the relevant FERPA provisions did not create any personal rights that could be enforced via § 1983. *Gonzaga*, 536 U.S. at 276, 287-90. In so holding, the Supreme Court held that it

> reject[ed] the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is *rights,* not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

*Id.* at 283. *Gonzaga* also clarified that the statute at issue must provide an "indication that Congress intend[ed] to create new individual rights," as evidenced by the use of "rights-creating language." *Id.* at 286-87. Along those same lines, the Supreme Court explained, a court should also determine whether Congress "intended to confer individual rights upon a class of beneficiaries," as opposed to a statute with an "aggregate focus." *Id.* at 275, 285 (citations modified). On this basis, the Supreme Court concluded that FERPA did not create any individually enforceable rights because the nondisclosure provisions at issue spoke only in terms of institutional policy and practice and therefore had an aggregate focus on directing the Secretary of Education's actions, rather than any focus on individual instances of disclosure. *Id.* at 287-88.

Later, in *Talevski*, the Supreme Court noted that Spending Clause legislation is particularly unlikely to give rise to a right of action under § 1983, explaining that "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal

Government to terminate funds to the State." *Talevski*, 599 U.S. at 183. Thus, adding to its holdings in *Gonzaga*, the Supreme Court held that § 1983 could "presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." 599 U.S. at 172. At issue in *Talevski* were two provisions of the Federal Nursing Home Reform Act ("FNHRA"), which the court ultimately found did contain the unambiguous rights creating language required under *Gonzaga*. Specifically, the Supreme Court noted that both provisions used the word "rights" and that the statutes' text "sustain[ed] the focus on individual residents." *Id.* at 183-86. But even if a statutory provision provides individual rights, a defendant can still demonstrate that Congress did not intend § 1983 to be available to enforce the rights by showing that Congress created "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 186 (citations modified). In other words, Congress must have intended for the statute's remedial scheme to be the plaintiff's exclusive remedy. *Id.* at 187.

Most recently, in *Medina*, the Supreme Court addressed whether another provision of the Medicaid Act, the "any qualified provider" provision in § 1396a(a)(23)(A) conferred § 1983-enforceable rights. The any qualified provider provision "requires States to ensure that any individual eligible for medical assistance may obtain it from any provider qualified to perform the service." *Medina*, 606 U.S. at 364 (citations modified). In *Medina*, the Supreme Court reiterated that

7

statutes enacted under the Spending Clause, like the Medicaid Act, are especially unlikely to confer rights enforceable under § 1983 and that it is "rare" in general for a statute to confer such rights.[4] *Id.* at 365, 368-69 ("Though it is rare enough for any statute to confer an enforceable right, spending-power statutes like Medicaid are especially unlikely to do so."). The Supreme Court acknowledged that its precedents had briefly taken a more expansive view of its power to imply private causes of action in *Wilder*, *Wright*, and *Blessing*, and expressly rejected any lower courts' reliance on those decisions going forward. *See id.* at 375-76 ("To the extent lower courts feel obliged, or permitted, to consider the contrary reasoning of *Wilder*, *Wright*, or *Blessing*, they should resist the impulse.").

The Supreme Court went on to distinguish the any provider provision from the FNHRA provisions at issue in *Talevski*, ultimately finding the provisions did not give rise to a private right of action. *Id.* at 377-80. In particular, the Supreme Court explained that the any provider provision spoke to what a State must do to participate in Medicaid, and that the provision benefited both providers and patients in the aggregate. *Id.* at 377. It also noted that the provision provided exceptions to the rule that state Medicaid plans must allow individuals to obtain care from any qualified provider, negating the plaintiff's argument that the provision announced a clear and

---

[4] "Observe, as well, what it would mean if § 1396a(a)(23)(A) did create an individually enforceable right. Many other Medicaid plain requirements would likely do the same. And instead of remaining 'atypical' exceptions, as our cases have said they are, rights-creating provisions might more nearly become the rule." *Medina*, 606 U.S. at 380.

unambiguous right. *Id.* at 378-79. Further, the Supreme Court held, the fact that the Medicaid Act only requires States to substantially comply with the any qualified provider provision showed that the statute's focus was on the aggregate rather than "the rights of any particular person." *Id.* at 379 (citations modified).

The Eleventh Circuit has not yet addressed *Medina* in the context of the Medicaid Act. The Court notes that the Eleventh Circuit recently affirmed this Court in a case factually similar to the present case. *See L.W. v. Comm'r of Ga. Dep't of Cmty. Health*, 176 F.4th 635 (11th Cir. 2026). *Medina* was decided during the pendency of the appeal in *L.W.* Notably, the State did not contest in *L.W.* whether the plaintiffs had a private right of action until its reply brief on appeal, and never cited *Medina*. (*See L.W. v. Comm'r of Ga. Dep't of Cmty. Health*, Case No. 24-12774, Doc. 27 at 15-24). The Eleventh Circuit found this argument waived because it was raised in a reply brief, and seemingly assumed there was still a private right of action to enforce § 1396a(a)(8)—one of the provisions at issue in the present case—without reconsidering its prior precedent. That precedent, which the Eleventh Circuit cited in support, was *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998). But *Doe* expressly relied on the now-repudiated reasoning of *Wilder*, *Wright*, and *Blessing*. *See Doe*, 136 F.3d at 715-19. So, although *L.W.* is a published decision that post-dates *Medina*, the Court assumes this portion of *L.W.* to be dicta, since the Eleventh Circuit declined to fully address the issue. Even if it is not, the Court finds *Doe* to be "undermined to the point of abrogation by a . . . Supreme Court decision," *see Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1223 (11th Cir. 2022) (citations modified), and

therefore the portion of *L.W.* relying on *Doe* and recognizing a private right of action to enforce § 1396a(a)(8) is not binding on this Court. *See Del Castillo*, 26 F.4th at 1223 ("To fully undermine a prior panel decision, the later Supreme Court decision must demolish and eviscerate each of its fundamental props." (citation modified)). Thus, the Court relies on *Medina* and its predecessors, along with decisions applying *Medina*.

The only circuit courts that appear to have addressed *Medina* in the context of the Medicaid Act so far are the Fourth and the Tenth Circuits. In *Lancaster v. Cartmell*, 162 F.4th 1063 (10th 2025), the Tenth Circuit examined whether *Medina* foreclosed a finding that § 1396a(a)(8) conferred privately enforceable rights under § 1983, and found that it did. *Lancaster*, 162 F.4th at 1068-70. Comparing § 1396a(a)(8) to 1396a(a)(23)(A), the provision at issue in *Medina*, the Tenth Circuit observed that "much of *Medina's* analysis regarding § 1396a(a)(23)(A) applies to § 1396a(a)(8)." *Id.* at 1068. In particular, the court noted,

> Both are Medicaid Act provisions that are nested within the same subsection, titled "Contents," that lists requirements States must substantially comply with to receive Medicaid funding. § 1396c(2). Both are requirements directed to the Secretary of Health and Human Services for plan approvals. And although § 1396a(a)(8) arguably has more "mandatory terms" and directives (such as that a State "must ... provide" certain obligations) than § 1396a(a)(23)(A), *Medina* teaches that mandatory language alone does not create individually enforceable rights.
>
> Like the adjacent provision at issue in *Medina*, § 1396a(a)(8) is a Medicaid provision enacted under Congress's spending power. That fact requires an assessment of whether this provision is the atypical, rare exception that confers individual rights. *Medina*, 606 U.S. at 380. For

10

the same reasons the *Medina* Court found that § 1396a(a)(23)(A) does not confer a private enforceable right, neither does § 1396a(a)(8).

*Id.* at 1068-69 (citation modified).

And in *Anderson v. Crouch*, 169 F.4th 474, the Fourth Circuit applied *Medina* to § 1396a(a)(1)(A) and (B). There, the Fourth Circuit came to the same conclusion as the courts in *Medina* and *Lancaster*, finding that these subsections also did not use clear and unambiguous rights-creating language, in part because they again "speak to what a State must do to participate in Medicaid" and "do not mention rights, of patients or anyone else." *Anderson*, 169 F.4th at 495-96. The Fourth Circuit noted that these subsections "share the same statutory context described in *Medina*," which it found further bolstered its conclusion. *Id.* at 496. And like in *Medina*, the Fourth Circuit held, § 1396a(a)(1)(A) and (B)'s broader statutory context "focus[ed] on aggregate compliance", which negated a finding that the statute outlined rights for any particular person. *Id.*

Based on the Court's research, no district court in the Eleventh Circuit has yet addressed this issue, either. But the majority of the district courts nationwide that have addressed it have found various Medicaid act provisions to be unenforceable via § 1983. *See, e.g.*, *Croffe v. Roberts*, 2026 WL 1047058, at *4-6 (E.D. Va. Apr. 17, 2026) (concluding § 1396a(a)(8), (a)(10)(B), and (a)(43)(C) do not confer privately enforceable rights); *Ramirez v. Or. Health and Sci. Univ.*, 2026 WL 353204, at *17-19 (D. Or. Feb. 9, 2026) (concluding that § 1396a(a)(8) does not confer privately enforceable rights); *A.M.C. ex rel. C.D.C. v. Smith*, 2026 WL 2021986, at *2-6 (M.D.

11

Tenn. July 13, 2026) (concluding that § 1396a(a)(3) does not confer privately enforceable rights); *Kiera M. v. Quin*, 2026 WL 937311, at *24-30 (M.D. Tenn. Apr. 7, 2026) (concluding that § 1396a(a)(8), (a)(10), (a)(43)(B) & (C), and § 1396d(a) and (r)(5) do not confer privately enforceable rights); *C.F. v. Moran*, 2026 WL 2098030, at *3-5 (W.D. Wash. July 21, 2026) (concluding that § 1396a(a)(8), (10), (a)(43)(C), and § 1396d(a)(4)(B) do not confer privately enforceable rights). *But see Hawai'i Disability Rights Ctr. v. Kishimoto*, 2026 WL 562065, at *3-10 (D. Haw. Feb. 27, 2026) (concluding that § 1396a(a)(8), (a)(10)(A), (a)(43), and § 1396d(a)(4)(B), (a)(13), and (r)(5) do confer privately enforceable rights).

The Court will follow the lead of these courts here and conclude that 42 U.S.C. § 1396a(a)(10)(A), (a)(43), and § 1396d(a)(8), (r)(5)[5] do not infer privately enforceable rights under § 1983. First, as the Tenth Circuit pointed out in *Lancaster*, much of *Medina's* analysis with regard to § 1396a(a)(23)(A) plainly applies to § 1396a(a)(10). In sum, both provisions are directed at the Secretary of Health and Human Services and list requirements for States to meet that are outlined in mandatory terms. *See Lancaster*, 162 F.4th at 1068-69; 42 U.S.C. § 1396a(10)(A) (stating that a State Medicaid plan "must . . . provide . . . for making medical assistance available . . . ."). This provision lacks the unambiguous rights-creating language deemed necessary in *Medina*. *Medina*, 606 U.S. at 368. Although this provision undoubtedly benefits

---

[5] The Plaintiffs have identified these provisions in their Response Brief as being the provisions their claims rely upon, so the Court focuses on these provisions. (*See* Pls.' Resp. in Opp'n to 2nd Mot. to Dismiss, at 7).

individuals enrolled in Medicaid, it lacks the "unmistakable focus" on individuals necessary to infer Congress's intent to confer enforceable rights. *Id.* at 368, 374. The same is true of § 1396a(a)(43); it simply requires State Medicaid plans to provide notice to eligible individuals of the availability of EPSDT services and it "contain[s] no explicit rights-creating terms." *See* 42 U.S.C. § 1396a(a)(43); *Keira M.*, 2026 WL 937311, at *29; *Croffe*, 2026 WL 1047058, at *6. In addition, the Court agrees with the Fourth Circuit that this subsection is "just one item on a list of scores of things a state plan must include to qualify for federal funding, and that list is directed to the Secretary of Health and Human Services, not to individuals." *Keira M.*, 2026 WL 937311, at *29 (citation modified) (quoting *Anderson*, 169 F.4th at 496).

Section 1396d(r)(5) also fails to confer any privately enforceable rights in the wake of *Medina*. This § 1396d(r) is incorporated by reference in subsection 1396a(a)(43) and falls within a statute entitled "Definitions," which makes sense because it defines the EPSDT services that § 1396a(a)(43) requires. *See* 42 U.S.C. § 1396d(r)(5) ("The term 'early and periodic screening, diagnostic, and treatment services' means the following items and services: . . . [s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services . . . ."). This section contains no rights-creating language and uses no mandatory language. *See Keira M.*, 2026 WL 937311, at *30 ("Definitions, by definition, are unlikely to create rights, and [§ 1396d(r)] is no exception. It contains no rights-creating terminology and simply explains what

13

services are covered by (a)(43).”). Finally, § 1396d(a)(8) fares no better. That subsection ensures that private duty nursing services are included in the medical assistance that states must pay for as part of its Medicaid plans for qualified individuals. 42 U.S.C. § 1396d(a)(8). This subsection, too, falls in the Medicaid Act's definitions section, does not use any rights-creating language or even mandatory language, and has no individual focus. *See C.F.*, 2026 WL 2098030, at \*4 (concluding that any references to “individuals” in § 1396d(a)(4) was not sufficient to demonstrate Congress's intent to confer private rights of action).

For all of these reasons, the Plaintiffs have failed to state a claim because, in light of *Medina*, they have no private right of action to enforce any of the Medicaid Act provisions their claims rely on under § 1983. Accordingly, the Defendant's Second Motion to Dismiss should be granted.

## IV. Conclusion

For the foregoing reasons, the Defendant Commissioner's Second Motion to Dismiss [Doc. 474] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and to close this case.

SO ORDERED, this ___6th___ day of August, 2026.


_____
THOMAS W. THRASH, JR.
United States District Judge

14